UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD ROE,<br>    *Plaintiff*,<br><br>    v.<br><br>HOTCHKISS SCHOOL,<br>    *Defendant*. | No. 3:18-cv-1701 (VAB) |

**RULING ON MOTION TO DISMISS**

Richard Roe ("Plaintiff") has sued The Hotchkiss School ("Defendant" or "Hotchkiss") for negligence, recklessness, negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of fiduciary duty related to sexual abuse by a Hotchkiss teacher. Complaint, ECF No. 1 ("Compl.").

Hotchkiss has moved to dismiss the intentional infliction of emotional distress and breach of fiduciary duty claims. Def.'s. Mot. to Dismiss, ECF No. 29 ("Def.'s Mot. to Dismiss").

For the following reasons, Hotchkiss's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

Roe's intentional infliction of emotional distress claim is dismissed, but his breach of fiduciary duty claim remains.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A.     **Factual Allegations**

Hotchkiss is a private boarding school in Lakeville, Connecticut. Compl. at ¶ 1. In 1970, Hotchkiss hired Roy Smith to teach in the school's English department. *Id.* at ¶ 22. Roy Smith allegedly immediately volunteered to serve as the school's athletic trainer shortly after being hired and acted as the only athletic trainer for fifteen years. *Id.* Mr. Roe alleges that "[i]t was well known and accepted" that "Smith groomed and abused boys in his School-provided

1

apartment in the boys' dorms." *Id.* at ¶ 28. Mr. Roe further alleges that "Hotchkiss had a strong protective culture that discouraged reporting and actively retaliated against reporters" and that "Hotchkiss had no policy for identifying or reporting sexual misconduct." *Id.* at ¶¶ 33, 34.

Mr. Roe enrolled at Hotchkiss as a fifteen-year-old student. *Id.* at ¶¶ 1, 3. He alleges that he unknowingly "entered an environment of well-known and tolerated sexual assaults and pedophilia." *Id.* at ¶ 3. He also alleges that Mr. Smith "inappropriately touched [him] on several occasions, and ultimately drugged and sexually assaulted him." *Id.* at ¶¶ 3, 22. Mr. Roe further alleges that Mr. Smith's actions "were inflicted on school property, during the school year, and under the noses of the School's teachers and administrators." *Id.* at ¶ 3.

Mr. Roe had Mr. Smith as an English teacher during his junior year at Hotchkiss. *Id.* at ¶ 41. During that year, Mr. Roe sought out and worked with Mr. Smith to revise almost every paper he had written because Mr. Smith was a harsh grader and he wanted a good grade in English in order to apply to and get admitted to the best college or university." *Id.* at ¶ 43.

According to Mr. Roe, "[b]y the end of the winter term, Richard was regularly visiting Smith's dormitory apartment, visiting at least every other week to revise drafts of English class papers." *Id.* at ¶ 52. When Mr. Roe met with Mr. Smith at his apartment, he alleges that "Smith established very clearly defined ritualized conduct of his student," where "Richard always had to sit side-by-side next to Smith on his couch" and "Smith frequently ma[de] a point by rubbing or squeezing Richard's upper thigh, or putting his arm over Richard's shoulder as they looked at a document or book together during these 'study sessions.'" *Id.* at ¶ 46.

On one occasion, Mr. Roe alleges that "Smith patted the back of Richard's leg as Richard was leaving. Smith did so in such a way as to hit Richard's testicles with his fingers," which he dismissed as an accident. *Id.* at ¶ 49.

On another occasion, Mr. Roe alleges that "Smith patted Richard's right thigh very high up, such that Smith hit Richard's penis with his hand." *Id.* at ¶ 50. After Richard moved Smith's hand, Smith apologized. *Id.*

Finally, Mr. Roe alleges that Mr. Smith drugged and sexually assaulted him before spring recess of his junior year. Mr. Roe claims that he "had an appointment with Smith in his apartment to finalize some revisions and discuss a new spring project." *Id.* at ¶ 53. After allegedly entering Mr. Smith's apartment, "Richard sat on the couch, and Smith offered Richard some tea. Smith had never offered Richard food or beverages before, so Richard accepted politely." *Id.* at ¶ 54. Once he finished the tea, Richard alleges that he closed his eyes while Mr. Smith was out of the room. *Id.* at ¶ 57. When he next opened his eyes, Mr. Roe alleges he could not move or speak as Mr. Smith sexually assaulted him. *Id.* at ¶ 58.

When Mr. Roe awoke from the ordeal, he allegedly felt "completely disoriented" and "thought something bad had happened, but he did not know what." *Id.* at ¶ 59. According to Mr. Roe, he had "unsteady legs" after leaving the apartment and struggled to get down the staircase to his dorm. *Id.* ¶ 61. Mr. Roe claims to have felt nauseous, "ashamed, confused, frightened, and in shock." *Id.* at ¶¶ 61, 63. In the aftermath of the alleged sexual assault, Mr. Roe claims that his "academic performance took a dramatic downturn." *Id.* at ¶ 64. While "his junior year had begun with stellar academic performance, his teacher noticed a distinct change in April, immediately after Smith drugged and assaulted Richard." *Id.* In addition, Mr. Roe allegedly deteriorated physically after the assault, losing over twenty pounds. *Id.* at ¶ 65.

According to Roe, parents entrusted their minor children to Hotchkiss' care for boarding school, "where children live[d] for the majority of their school years." *Id.* at ¶14. With this trust, Hotchkiss "is therefore responsible not only for the children's education, but also their safety,

their protection, and their physical and emotional well-being." *Id.* Along with the trust parents placed in Hotchkiss, Mr. Roe alleges that "Hotchkiss administrators and faculty understood this was their duty." *Id.* at ¶ 15. And former Headmaster Arthur White would say during orientation "Parents, your job is to leave," which, according to Mr. Roe, allegedly shows that Hotchkiss knew of its duty to protect children from harm while they were away from their parents at boarding school. *Id.*

Mr. Roe alleges that Mr. Smith would have been unable to sexually assault him without Hotchkiss' affirmative acts. These affirmative acts included "housing Smith in and giving him unfettered access to and authority over a boys' dormitory, allowing him unsupervised access to vulnerable young children, allowing him without any medical credentials to give pills to children, and allowing him to work in the athletics program and locker room areas where he was able to touch and leer at the naked and partially-clothed bodies of boys," which allegedly exposed Mr. Roe to a high risk of harm. *Id.* at ¶ 38.

Since his time at Hotchkiss, Mr. Roe claims to have "suffered school and career difficulty, difficulty sleeping, repeated panic attacks, and intrusive nightmares and flashbacks." *Id.* at ¶ 66. Mr. Roe also claims to have "struggled with thoughts of suicidal ideation, planning, and even unsuccessful attempts to end his life." *Id.* Mr. Roe alleges that the trauma has resulted in "emotional turmoil and feelings of helplessness" that "led to excessive self-medication through substance abuse." *Id.* And Mr. Roe alleges that his "ability to maintain intimate physical, sexual, and emotional relationships with other human beings has been irreparably damaged." *Id.* at ¶ 67. Most notably, Mr. Roe claims that "[h]is personal relationships with friends, family, and loved ones were damaged by his inability to form trusting relationships." *Id.* at ¶ 66.

### B. Procedural History

On October 12, 2018, Mr. Roe filed his Complaint against Hotchkiss School, alleging negligence, recklessness, negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of fiduciary duty. Compl.

On December 20, 2018, Hotchkiss moved to dismiss two of Mr. Roe's claims. Def.'s Mot. to Dismiss, ECF No. 29.

On January 24, 2019, Mr. Roe filed a memorandum in opposition to Hotchkiss motion to dismiss. Mem. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 39 ("Mem. in Opp'n to Def.'s Mot. to Dismiss").

On June 28, 2019, the Court held a hearing on Hotchkiss' Motion to Dismiss.

## II. STANDARD OF REVIEW

A complaint must have a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)).

Second, "only a complaint that states a plausible claim for relief survives a motion to

dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must have "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true"), *cert. denied*, 537 U.S. 1089 (2002).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

Hotchkiss seeks to dismiss two of Mr. Roe's claims: intentional infliction of emotional distress and breach of fiduciary duty. The Court will address each of these claims in turn.

### A. Intentional Infliction of Emotional Distress

To prevail on an intentional infliction of emotional distress claim, "[i]t must be shown:

(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Watts v. Chittenden*, 301 Conn. 575, 586 (2011) (citing *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000)).

Hotchkiss argues that Mr. Smith's alleged misconduct falls outside the scope of his employment with Hotchkiss and cannot be imputed to the school. Mem. of Law in Supp. of Def.'s Mot. to Dismiss at 4, ECF No. 30 ("Mem. of Law in Supp. of Def.'s Mot. to Dismiss"). Because Mr. Smith's sexual misconduct was not within the scope of his employment relationship with Hotchkiss, Hotchkiss argues that it cannot be held liable for his actions. *Id.* at 5–6.

Moreover, in Hotchkiss's view, nonfeasance cannot support the extreme and outrageous conduct prong of an intentional infliction of emotional distress claim. *Id.* at 4 (citing *Braswell v. Comty. Sols., Inc.*, 2012 U.S. Dist. Lexis 188319 at * 38–39 (D. Conn. Aug. 27, 2012)). Under Connecticut law, Hotchkiss argues that inaction cannot be the basis for intentional infliction of emotional distress. *Id.* at 6–7. Without the ability to impute Mr. Smith's conduct to the school or use inaction as a basis for an intentional tort, Hotchkiss argues that Mr. Roe cannot succeed on an intentional infliction of emotional distress claim.

In response, Mr. Roe argues that the school-sanctioned teaching, grading, and dormitory supervision conducted by Mr. Smith creates vicarious liability because those roles are within the scope of his employment. Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 8. Within Mr. Smith's role as a teacher, Mr. Roe argues that students had to meet with him for feedback. *Id.* at 9. It was within this official capacity that Mr. Roe argues Mr. Smith "used his job of working on papers with students to groom and abuse them." *Id.* Because the sexual misconduct occurred

7

within Mr. Smith's school-authorized time and space, happened while Mr. Smith was supposed to be helping with Mr. Roe on school assignments within his role as a teacher, and was at least partly motivated by his teaching at Hotchkiss, Mr. Roe argues that Hotchkiss is vicariously liable for Mr. Smith's actions. *Id.* at 10.

Additionally, in Mr. Roe's view, Hotchkiss's alleged efforts to allow and foster Mr. Smith's misconduct amount to more than the nonfeasance that Hotchkiss claims shields it from liability. *Id.* at 12. These efforts allegedly include non-compliance with state reporting requirements, retaliation against those that reported sexual abuse, and allowing Mr. Smith to serve in roles where he had access to vulnerable students. *Id.* at 12–14. These acts, taken together, allegedly were outrageous.

The Court disagrees.

Under the doctrine of respondeat superior, an employer is liable for torts committed by an employee "within the scope of his employment and in the furtherance of the employer's business." *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 500–01 (1995) (quoting *Cardona v. Valentin*, 160 Conn. 18, 22 (1970)). Whether an employee's willful conduct was within the scope of employment is generally a factual issue, except when the employee's action is outside of the scope of employment as a matter of law. *A–G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 207 (1990). Indeed, many Connecticut "trial court judges have held that sexual misconduct by an employee occurs outside the scope of employment." *See v. Bridgeport Catholic Diocesan Corp.*, 1997 WL 466498, at *3 (Conn. Super. Ct. 1997) (listing cases where trial courts have found that an employer is not vicariously liable for sexual assault by an employee); *see also Williams v. Cmty. Sols., Inc.*, 932 F. Supp. 2d 323, 335 (D. Conn. 2013) ("Generally, [s]exual assault by an agent is outside the scope of an agency relationship and not in

8

furtherance of the principal's affairs.'") (collecting cases).

Here, Mr. Roe alleges that Mr. "Smith's inappropriate, sexualized behavior was widely known and frequently publicly commented upon." Compl. at ¶ 26. Mr. Roe further alleges that Mr. "Smith groomed and abused boys in his School-provided apartment in the boys' dorms." *Id.* at ¶ 28. And that Mr. "Smith's practice was long-standing and well-defined" in such a way that it "was well-known, and accepted and protected by the School's administration." *Id.* at 29. Finally, Mr. Roe alleges that "the School's affirmative acts—including housing Smith in and giving him unfettered access to and authority over a boys' dormitory, allowing him unsupervised access to vulnerable young children, allowing him without any medical credentials to give pills to children, and allowing him to work in the athletics program and locker room areas where he was able to touch and leer at the naked and partially-clothed bodies of boys—created, and exposed Richard to, a known high degree of risk of harm." *Id.* at ¶ 38.

Mr. Roe also alleges that he "regularly visit[ed] Smith's dormitory apartment, visit[ed] at least every other week to revise drafts of English class papers." Compl. at ¶ 52. And on the evening of Mr. Smith's alleged sexual assault, Mr. Roe alleges that he "had an appointment with Smith in his apartment to finalize some revisions and discuss a new spring project." *Id.* at ¶ 53.

While all of these factual allegations suggest that an intentional infliction of emotional distress claim can be brought against Mr. Smith, Mr. Roe has not alleged that Hotchkiss intended for Mr. Smith to abuse him sexually as part of his work for the school. *See Larsen*, 232 Conn. at 501 (finding that "it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for [respondeat superior] to apply.").

Mr. Roe also alleges that "Hotchkiss was a hotbed of pedophiles and child sexual abusers. Rampant sexual abuse—of boy- and girl-students—by faculty members" that was

9

"widely known by Hotchkiss faculty and administrators," and that "Hotchkiss knew or should have known about these predators in its midst." Compl. at ¶¶ 19, 20. And that Hotchkiss was on notice that Roy Smith sexually assaulted students because it was reported to the then-Hotchkiss Headmaster Arthur White in the 1980s. *Id.* at ¶ 32. Hotchkiss also allegedly failed to adopt sexual misconduct policies that were allegedly "the norm at schools in the 1970s as well as today, and for a school not to have one was highly inappropriate." *Id.* at ¶ 34. Finally, to allow Roy Smith to serve as a dorm head with this information allegedly "allowed predators like Smith access to children at all hours and ample opportunity to groom and abuse children in their own homes." *Id.* at ¶ 40.

While each these factual allegations addresses the issue of whether Hotchkiss was negligent or reckless, Mr. Roe's intentional tort claim against Hotchkiss, i.e., that Hotchkiss intended that he, specifically, would be sexually abused and suffer emotional distress as a result, must be based on more than allegations of neglectful or even reckless behavior. Indeed, Mr. Roe has not identified any Connecticut decision imposing vicarious liability under this tort based on these allegations. *See Twombly*, 550 U.S. at 555 (finding that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (internal quotation marks and citation omitted)).

Accordingly, Mr. Roe's claim against Hotchkiss for the intentional infliction of emotional distress fails as a matter of law.

### B. Breach of Fiduciary Duty

For a breach of fiduciary duty claim to succeed, a plaintiff must meet four elements: "[1] [t]hat a fiduciary relationship existed which gave rise to . . . a duty of loyalty . . . an

obligation . . . to act in the best interests of the plaintiff, and . . . an obligation . . . to act in good faith in any matter relating to the plaintiff; [2] [t]hat the defendant advanced his or her own interests to the detriment of the plaintiff; [3] [t]hat the plaintiff sustained damages; [and] [4] [t]hat the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty." *Chioffi v. Martin*, 181 Conn. App. 111, 138 (2018) (citing *Rendahl v. Peluso*, 173 Conn. App. 66, 100 (2017) (emphasis and internal quotation marks omitted)).

Hotchkiss argues that the relationship between a school and its students, on its own, is not fiduciary in nature. Mem. in Supp. of Def.'s Mot. to Dismiss at 9. Even though a school may owe a fiduciary duty to a student under limited circumstances, Hotchkiss argues that those circumstances are not present here and that Richard Roe merely asserts labels and conclusions in support of the fiduciary duty claim. *Id.* at 9. Hotchkiss argues that without an allegation of fraud, self-dealing, or conflict of interest, there can be no fiduciary duty and the claim should be dismissed. *Id.* at 11. Finally, Hotchkiss asserts that there was no special relationship forming the basis for Mr. Roe's breach of fiduciary duty claim on.

In response, Mr. Roe argues that questions of whether there was a breach of fiduciary duty are fact-intensive inquiries to be decided by a jury. Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 15. Mr. Roe also argues that the Connecticut Supreme Court has not expressly limited what can give rise to a fiduciary duty; rather, the relevant inquiry is whether there is a duty created by one party to act to the benefit of another party. *Id.* at 16–17. Richard Roe finally argues that the absence of caselaw does not mean a school employee can never owe a fiduciary duty to a student. *Id.* at 18.

The Court agrees.

The Connecticut Supreme Court has stated that "[a] fiduciary or confidential relationship

is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of another . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." *Cadle Co. v. D'Addario*, 268 Conn. 441, 455 (2004) (internal quotation marks omitted). The Connecticut Supreme Court "ha[s] not, however, defined that relationship 'in precise detail and in such a manner as to exclude new situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other.'" *Falls Church Grp., Ltd. v. Tyler, Cooper and Alcorn, LLP*, 281 Conn. 84, 108 (2007) (quoting *Alaimo v. Royer*, 188 Conn. 36, 41 (1982)). While "agents, partners, lawyers, directors, trustees, executors, receivers, bailees and guardians" are axiomatic of fiduciaries, fiduciary relationships "may differ from the relationship involving lay people who are wholly dependent upon the expertise of a fiduciary." *Id.* at 108–09.

While Hotchkiss cites to a number of cases where courts have failed to impose a fiduciary duty on schools to students, most of those cases involve adults (college students)—not minors. *See Pawlowski v. Delta Sigma Phi*, No. CV-03-0484661S, 2009 WL 415667, at *5 (Conn. Super. Ct. Jan. 23, 2009) (recognizing that "no special relationship exists between a college and its *own* students because a college is not an insurer of the safety of its students" and "recognition of a duty on the facts presented here would inevitably require the university to restrict the private recreational activities of its students" (citation omitted)); *Knelman v. Middlebury Coll.*, 570 F. App'x 66, 68 (2d Cir. 2014) (noting that under Vermont Law, "[w]hile schools, colleges, and educators assume the responsibility of educating their students, the law does not recognize the existence of a special relationship for the purposes of a breach of fiduciary claim."). More specifically, the minors here are left in the care of a boarding school in

addition to—if not in lieu of—their parents. *See* Compl., at ¶ 15 (citing former Headmaster Arthur White during orientation, stating "[p]arents, your job is to leave").

Given that critical distinction between adult students and minor children and the Connecticut Supreme Court's decision in *Falls Church* not categorically ruling out Mr. Roe's breach of fiduciary claim, the claim will survive provided the factual allegations in the Complaint are sufficient to meet this claim's elements.[1]

They do.

Mr. Roe has alleged facts sufficient to make a fiduciary relationship between Roe and Hotchkiss plausible, at least in this particular context, keeping minor children safe from the alleged sexual abuse of Hotchkiss's own teachers. He alleges that "[p]arents entrust[ed] their minor children to [Hotchkiss] care, *in loco parentis*," which is "even more so for boarding schools, where children live for the majority of their school years." Compl. at ¶ 14. He further alleges that Hotchkiss then became "responsible not only for the children's education, but also their safety, their protection, and their physical and emotional well-being," which "Hotchkiss administrators and faculty understood this was there duty." *Id.* at ¶¶ 14, 15.

Within this zone of trust, Mr. Roe alleges that "Hotchkiss promised Richard and all its other students that the health and welfare of the students was its highest priority, and accepted a duty to Richard and to the other minor children in its care and custody to do everything within its

---

[1] In Hotchkiss's view, the Connecticut Supreme Court's decision in *Sherwood v. Danbury Hospital*, 278 Conn. 163 (2006), forecloses this claim because, as alleged, it is merely duplicative of Roe's negligence claim. *See Sherwood*, 278 Conn. at 196 ("Although the plaintiff has alleged that the defendant breached both a general duty of care and a fiduciary duty by failing to inform the plaintiff of the risks associated with her transfusion, each of those purported duties is predicated on the same alleged facts; indeed, the plaintiff has failed to explain how those two duties differ in any material respect."). Because that decision involved a case at the summary judgment stage, rather than at the motion to dismiss stage, that ruling is inapposite. In any event, the Connecticut Supreme Court also foreclosed that specific breach of fiduciary duty claim because the "plaintiff has not alleged any facts that would support a claim of fraud, self-dealing, conflict of interest or the like." *Id.* at 196–97. As discussed below, the allegations here, at least in this context and at this stage of the proceedings, are sufficient to survive.

power to protect them from sexual abuse by other students and by the School's faculty." *Id.* at ¶ 17. And Smith's allegedly sexualized behavior was publicly commented upon and Hotchkiss administrators were allegedly on notice that he had sexually assaulted another boy in the 1980s. *Id.* at ¶¶ 26, 32.

Based on these allegations, Richard Roe has pled enough facts to show that Mr. Roe was "wholly dependent upon the expertise of a fiduciary"—in this case Hotchkiss. *See Falls Church Grp., Ltd.*, 281 Conn. at 108–09.

Viewing all factual allegations in the Complaint as true and in the light most favorable to Mr. Roe, as this Court must, *Cohen*, 711 F.3d at 359, the Court finds that Richard Roe has alleged enough facts related to a fiduciary relationship "to render a claim plausible." *Arista Records LLC*, 604 F.3d at 120 (quoting *Turkmen*, 589 F.3d at 546).[2]

Accordingly, for now, Mr. Roe's breach of fiduciary duty claim remains in the case.

## IV. CONCLUSION

For the foregoing reasons, Hotchkiss's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Roe's intentional infliction of emotional distress claim is dismissed, but his breach of fiduciary duty claim remains.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of July 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[2] As indicated above, this ruling does not suggest and should not be read as suggesting that the fiduciary relationship allegedly existing between Hotchkiss and its students extends beyond the narrow confines of the factual allegations made in this particular case. *See Briscoe v. City of New Haven*, 654 F.3d 200, 206–07 (2d Cir. 2011) (finding that "the Court's precise formulation of its holding [] supersedes any dicta arguably to the contrary").

14